UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MAUREEN S.,

                           Plaintiff,

v.                                                        5:23-CV-01088
                                                          (DNH/ML)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

OLINSKY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
 *Attorneys for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.          GEOFFREY M. PETERS, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

      Plaintiff Maureen S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). (Dkt. No. 1.) This matter was referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 4.) This case has proceeded in accordance with General Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11, 16, 17.) For the reasons set forth below, this Court recommends the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion for judgment on the pleadings, and remand the Commissioner's decision for further administrative proceedings.

I. **PROCEDURAL HISTORY**

On October 14, 2016, Plaintiff protectively filed an application for DIB, alleging disability dating from September 21, 2016. (Administrative Transcript ("T.") 215-221.) Her application was denied initially on December 19, 2016. (T. 93-105.) Plaintiff's subsequent request for a hearing was granted. (T. 106-107, 159-164.) On June 5, 2019, Plaintiff, who was represented by counsel, testified by telephone before Administrative Law Judge ("ALJ") Laureen Penn. (T. 37-70.) At the same hearing, the ALJ received the testimony of vocational expert ("VE") LaShun Alexander. (T. 58-60, 62-70.) The ALJ issued an unfavorable decision on June 17, 2019. (T. 12-36.) The Appeals Council denied Plaintiff's request for review on July 21, 2020, and Plaintiff filed a complaint with the Northern District of New York. (T. 1-6, 1819-1825.)

By a decision dated March 29, 2022, the Honorable United States District Judge Thomas J. McAvoy, , remanded the case to the Commissioner for further administrative proceedings. (T. 1826-1848.) On July 3, 2022, the Appeals Council remanded Plaintiff's claim back to ALJ Penn for further proceedings. (T. 1849-1853.)

On May 15, 2023, the ALJ held a hearing at which Plaintiff and VE Daniel R. McKinney, Sr. testified. (T. 1788-1818.). On June 22, 2023, the ALJ found Plaintiff was not disabled under

2

the Social Security Act. (T. 1758-1787.) In response, Plaintiff commenced this action in the Northern District of New York, and the matter was brought before this Court. (Dkt. No. 1.)

## II. GENERALLY APPLICABLE LAW

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B.     Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments;  (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;  (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### III.   FACTS

On her alleged onset date, Plaintiff was 44 years old. (T. 215.)  She is a high school graduate who attended regular education classes. (T. 919.)  Her employment history includes work as an administrative clerk, an owner-operator of a manicurist business, and most recently, a medical secretary. (T. 56-64.)  Plaintiff reported that she left this position in 2016 after her physical impairments prevented her from performing her job duties.  (T. 1795-1796.)

Plaintiff has sought treatment for back and joint pain due to a number of diagnosed impairments including fibromyalgia, psoriatic arthritis, and degenerative disc disease. (T. 555, 812-814, 1226.)  She reported that the pain prevented her from sitting or standing in one position

for extended periods and made it difficult to use her hands. (T. 1798-1799.) She also had been diagnosed with migraines, that she described as "bursts of light" that caused pain and dizziness. (T. 1800-1802.) Plaintiff also experienced severe abdominal pain and recurrent gastrointestinal distress of unclear origin that forced her to take numerous breaks during the workday and to frequently miss work. (T. 1795-1798.)

The record includes Plaintiff's medical history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.   THE ALJ'S JUNE 22, 2023 DECISION

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2021. (T. 1764.) Based upon her review of the administrative record, the ALJ next found that Plaintiff had not engaged in substantial gainful activity during the relevant period between September 21, 2016 and June 20, 2019. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments through June 20, 2019: "[f]ibromyalgia with migraines, inflammatory poly-arthropathy; seronegative rheumatoid arthritis (RA;) psoriatic arthritis (PsA) with psoriasis; bilateral DeQuervain's tenosynovitis[2] and carpal tunnel syndrome (CTS), status-post right carpal tunnel and tendon release; degenerative disc disease of the cervical and lumbar spine; obesity; bilateral ovarian cysts, status-post right and then left salpingo-oophrectomies[3]; bilateral tinnitus; generalized anxiety disorder (GAD); and major depressive disorder (MDD)." (T. 1764-1768.)

---

[2] DeQuervain's tenosynovitis is characterized by pain in the tendons on the thumb side of the wrist that is often aggravated by turning the wrist, grasping, and making a fist. https://www.mayoclinic.org/diseases-conditions/de-quervain-tenosynovitis/symptoms-causes/syc-20371332 [https://perma.cc/SHU8-KWWE]

[3] A salpingo-oophorectomy is the surgical removal of an ovary and fallopian tube.

At step three of the evaluation, the ALJ found that, through June 20, 2019, Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (disorders of skeletal spine resulting in compromise of a nerve root), Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 2.07 (disturbance of labyrinthine-vestibular function), 11.14 (peripheral neuropathy), and 14.09 (inflammatory arthritis). (T. 1768-1770.) The ALJ also considered the impact that Plaintiff's severe fibromyalgia might have in combination with her other impairments, but found that the combined conditions did not reach listing-level severity. (T. 1769.) The ALJ also found that Plaintiff's mental health impairments did not rise to the level of a listed impairment. (T. 1769-1770.)

Next, the ALJ found that Plaintiff could perform less than the full range of light work during the relevant period. (T. 1771-1776.) Specifically, she found that Plaintiff

> could sit for 30 minutes at a time and for six hours total; she could stand and walk for four hours; she could occasionally stoop, crouch, kneel, crawl, and climb stairs and ramps; but she could not climb ladders, ropes, or scaffolds; she could occasionally reach overhead bilaterally; she could frequently finger and handle bilaterally; she could not have concentrated exposure to loud noise, as loud is defined in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO); she could not have concentrated exposure to vibration or hazards, including unprotected heights and moving machinery; she could understand, remember, and carry out simple instructions; and she could deal with occasional changes in a routine work setting. [The ALJ] further finds, beginning on July 18, 2018 through June 20, 2019, that the claimant was further restricted to only two hours of standing and walking.

(T. 1771.)

In making this RFC determination, the ALJ stated that she considered all of Plaintiff's

---

https://my.clevelandclinic.org/health/treatments/17800-oophorectomy [https://perma.cc/53M8-YXS5]

symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (T. 1771.)  The ALJ further stated that she considered opinion evidence and in accordance with 20 C.F.R. § 404.1529. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations and found that her statements concerning the intensity, persistence, and limiting effects of these symptoms "were not generally consistent with the record as a whole," and that the "alleged severity of the claimant's symptoms was inconsistent with her courses of treatment, examination findings, and reported functioning through June 20, 2019." (T. 1772.)

At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work through June 20, 2019. (T. 1776.)  Relying on the VE testimony, the ALJ next found that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy during the relevant period. (T. 1777-1778.)  Thus, the ALJ found that Plaintiff was not disabled at any time from September 21, 2016 through June 20, 2019. (T. 1778.)

## V.     ISSUES IN CONTENTION

Plaintiff argues that remand for further administrative proceedings is necessary because the ALJ lacked substantial evidence to support her physical RFC determination. (Dkt. No. 11 at 15-24; Dkt. No. 17 at 1-6.)  Specifically, Plaintiff argues that the ALJ failed to properly apply the treating physician rule to the opinion of Plaintiff's long-time primary care physician, Dr. Nisha Singh. (Dkt. No. 11 at 15-21; Dkt. No. 17 at 1-5).  She further contends that the ALJ failed to properly consider the functional limitations imposed by Plaintiff's knee impairment. (Dkt. No. 17 at 5-6.)  The Commissioner contends that the ALJ properly applied the treating physician rule

in reaching an RFC and overall disability determination supported by substantial evidence. (Dkt. No. 16 at 6-19.)

For the reasons set forth below, this Court recommends that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, and this case be remanded to the Social Security Administration for further administrative proceedings to allow proper consideration of the medical opinion evidence, further development of the record as needed, and reevaluation of the ultimate determination of disability.

## VI. FOLLOWING REMAND, THE ALJ STILL FAILED TO PROPERLY APPLY THE TREATING PHYSICIAN RULE TO DR. SINGH'S OPINION.

### A. Treating Physician Rule

As Judge McAvoy discussed in his March 29, 2022 Decision and Order, Plaintiff's application for benefits is governed by the "treating physician rule" because it was filed prior to March 27, 2017. *See Maureen S. v. Comm'r of Soc. Sec.*. No. 5:20-CV-01158, 2022 WL 909219, at *4 (N.D.N.Y. March 29, 2022). As set forth in 20 C.F.R. §§ 416.927(c) & 404.1527(c), this rule requires that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) & 20 C.FR. § 404.1527(c)(2)) (internal quotation marks omitted).  However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that

are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3.d 28, 32 (2d Cir. 2004).

Judge McAvoy's decision succinctly explained how the Court determines whether an ALJ properly applied the treating physician rule:

> ". . . the ALJ must articulate 'good reasons' to rebut the presumption of controlling deference conferred on the treating physician's opinion." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (citing *Estrella*, 925 F.3d at 96; *Burgess*, 537 F.3d at 129–30). "If an ALJ reasonably finds that the treating physician's medical opinion is not entitled to 'controlling weight' under the treating physician rule, then the ALJ must determine how much weight to assign the treating physician's opinion." *Id*. at n. 3. "The ALJ does so by 'explicitly' applying the *Burgess* factors: '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Id*. (quoting *Estrella*, 925 F.3d at 95-96, in turn quoting *Selian v. Astrue*, 708 F.3d 409, 419-20 (2d Cir. 2013) (per curiam)); *see Anthony A. v. Comm'r of Soc. Sec*., No. 3:20-CV-00943 (TWD), 2022 WL 806890, at *3 (N.D.N.Y. Mar. 17, 2022)("If an ALJ gives a treating physician's opinion less than controlling weight, he or she must consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) the consistency of the treating physician's opinion with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in the claimant's case.") (citing 20 C.F.R. § 404.1527(c)). Failure to explicitly apply these factors "constitutes a procedural error subject to a harmless error analysis." *Colgan*, 22 F.4th at 360, n. 3 (citing *Estrella*, 925 F.3d at 95-96). "[A]n ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule." *Samantha S. v. Comm'r of Soc. Sec*., 385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019). However, "[t]he failure to apply the appropriate legal standards for considering a treating physician's opinion constitutes a basis for reversal of an adverse determination, as is the decisionmaker's failure to provide reasons for rejecting the opinions." *Jessica W. v. Comm'r of Soc. Sec*., No. 19-CV-01427 (DEP), 2021 WL 797069, at *6 (N.D.N.Y. Mar. 2, 2021) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)).

*Maureen S.,* 2022 WL 909219, at *4.

Where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that

the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. §§ 416.927 & 404.1527(c) is required. *Atwater v. Astrue*, 512 Fed Appx. 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d at 31-32). Rather, a "searching review of the record" may find adequate good reasons to assure a court that the substance of the rule was followed. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *see also Ferraro v. Saul*, 806 Fed. Appx. 13, 15-16 (2d Cir. 2020).

**B.  Prior Remand for Violation of Treating Physician Rule**

In the original June 17, 2019 decision remanded by Judge McAvoy, the ALJ reviewed Dr. Nishi's opinion as follows:

> [T]he undersigned gives limited weight to the opinion provided by Nisha Singh, M.D., the claimant's primary care provider, who opined that the claimant would be limited to a significantly reduced range of sedentary work, including that she could sit, stand, or walk for less than two hours total, she would need frequent breaks, she would need to elevate her legs above her waist eighty percent of the time, and would be off-task more than twenty percent of the workday. However, the undersigned finds that such extreme limitations are unsupported by the objective evidence in the record and inconsistent with the examination findings detailed above, which generally found the claimant had a normal gait, with intact strength and sensation, as well as benign diagnostic imaging and testing. Moreover, these limitations appear to be largely based on the claimant's self-reports, as Dr. Singh's own physical examinations routinely found the claimant had normal motor strength and sensation, as well as full range of motion and a smooth and coordinated gait.

*Maureen S.*, 2022 WL 909219, at *5.

Judge McAvoy found that this analysis did not provide sufficient explanation to satisfy the treating physician rule. *Id*. at 5-7. In particular, the Court found fault with the ALJ's failure to "explain whether the asserted restrictions were supported by medically acceptable clinical and laboratory diagnostic techniques underlying these diagnoses or from the treatments that Plaintiff received." *Id*. at 5. Where the ALJ did cite to objective evidence, her general references to examination results showing "normal motor strength and sensation, as well as full range of

11

motion and a smooth and coordinated gait," came "close to the ALJ improperly offering her own medical opinion as a reason to overcome the presumption created by the treating physician rule." *Id*. at 6. Judge McAvoy also found that the ALJ's decision placed "too much emphasis on the opinion being based on Plaintiff's subjective complaints," because well-established caselaw in the Second Circuit hold that a physician's reliance on subjective complaints "does not undermine his opinion 'as a patient's report of complaints, or history, is an essential diagnostic tool.'" *Maureen S.*, 2022 WL 909219, at *5 (collecting cases).

Judge McAvoy found the ALJ's misapplication of the law particularly harmful because Plaintiff's chronic conditions, including fibromyalgia, psoriatic arthritis, migraines, and chronic abdominal pain "may not be susceptible to precise diagnoses through particular medical tests," and the ALJ's cursory inquiry failed to explain "whether, in light of Plaintiff's diagnoses and treatments, Plaintiff's subjective complaints could have properly been used as diagnostic tool supporting Dr. Singh's restrictions." *Id*.

## C. Current Inadequate Application of Treating Physician Rule

In the decision at issue in this case, the ALJ addressed Dr. Singh's opinion in somewhat more detail, stating:

> The undersigned also considered treating source medical opinions, starting with Dr. Singh, the claimant's primary care provider. Dr. Singh opined in May 2019 that the claimant was restricted to less than sedentary work with additional significant exertional and nonexertional limitations, notably including that she would need to change positions at-will, that she would need to elevate her legs above the waist, that she would require unscheduled breaks, and that she would be off-task 20 percent of the workday. Dr. Singh's medical opinion was likely work-preclusive. Dr. Singh cited the claimant's diagnoses of anxiety, depression, migraines, and PsA, but not the underlying objective medical evidence that supported those diagnoses, and the claimant's own self-reported assessment that she was not "reliable/dependable in a work environment due to pain." Objective medical evidence supports the diagnoses cited by Dr. Singh, but not the severity implied by her extreme conclusions. To the contrary, as discussed above at length, the

claimant's medical record shows that she had only limited positive examination findings with consistently full, 5/5, motor strength, a generally normal gait that was unassisted, and no signs of consistent or persistent behavioral or cognitive abnormalities. That contrast is particularly evident in Dr. Singh's own treatment notes. Looking at just the year prior to Dr. Singh signing her medical opinion, she found that the claimant had normal or unremarkable examination findings, including that she did not appear in acute distress and had a "coordinated and smooth" gait with no "obvious weakness" or tenderness. Dr. Singh's citations to diagnoses or the claimant's self-reported limitations does not bridge that inconsistency between her and others objective medical findings and her extreme work-preclusive conclusions. The contrast between Dr. Singh's medical opinion and the medical record greatly undermined any deference that would normally be given to her conclusions and the undersigned gave Dr. Singh's medical opinion little weight accordingly.

(T. 1752-1757.)

Although the ALJ recognized that Judge McAvoy had remanded her prior decision due to errors in assessing Dr. Singh's opinion, her expanded analysis still falls short of the requirements of the treating physician rule as outlined in *Burgess* and *Estrella*.[4] (T. 1761, 1775.)  To begin with, the ALJ recognized Dr. Singh as Plaintiff's primary care physician, but did not consider the "frequency, length, nature, and extent of treatment."  *See Ferraro*, 806 Fed. Appx. at 15 ("merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'").  Dating back to 2012, Dr. Singh treated Plaintiff for a number of her chronic conditions, including psoriatic arthritis, migraines, and abdominal pain. (T. 1752.)  She also oversaw Plaintiff's referrals to specialists in rheumatology, pain management, neurology, and dermatology during the time period being

---

[4] An ALJ's failure to follow a court's remand order can be reversible error.  *See Sullivan v. Hudson*, 490 U.S. 877, 886 (1989). ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.")  Plaintiff has not raised that argument, and this Court's remand recommendation is based on improper application of the treating physician rule, not on noncompliance with Judge McAvoy's remand order.  In this Court's view, the ALJ attempted to comply with the judicial remand order, but failed to properly apply the governing rule.

reviewed by the ALJ. (T. 1756.) The ALJ's failure to acknowledge the Dr. Singh's lengthy treatment relationship and experience with Plaintiff's multiple conditions and evolving treatment plans was error. *Daniels v. Comm'r of Soc. Sec*, No. 19-CV-6788, 2020 WL 6253304, at *3 (W.D.N.Y. Oct. 23, 2020). (where a treating relationship "involves numerous visits, over a stretch of years, wherein the physician is continuously developing and monitoring the individual's treatment plans," it is "precisely the type of circumstance in which the Second Circuit has made clear explicit discussion of the frequency, length, nature, and extent of the treatment is required by the ALJ.") (citing *Ferraro*, 806 F. App'x at 15); *see also* 20 C.F.R. § 404.1527(c)(2)(i), ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

In addition, although the ALJ makes general reference to "normal or unremarkable" physical examination results, including full motor strength and a "coordinated and smooth gait," she fails to "cite to particular evidence and explain why that evidence is inconsistent with Dr. Singh's opinion." (T. 1775, 1837.) As Judge McAvoy previously found, a failure to fully articulate the reasons for discounting the only medical opinion addressing Plaintiff's physical functional limitations is particularly harmful given the nature of Plaintiff's impairments. *Maureen S.,* 2022 WL 909219, at *5 (noting that Plaintiff's fibromyalgia, migraines, psoriatic arthritis, and chronic abdominal pain "may not be susceptible to precise diagnoses through particular medical tests," and ". . . Plaintiff's subjective complaints could have properly been used as diagnostic tool supporting Dr. Singh's restrictions.").

The Commissioner's brief correctly asserts that an ALJ is not required to rely on a particular medical opinion for an RFC determination to be supported by substantial evidence.

*Tankisi v. Comm. of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (explaining ALJ's decision may be affirmed when there is no opinion evidence so long as "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."). However, an ALJ may not improperly substitute his or her own judgment for the only competent medical opinions of record. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir.2010) (an ALJ may choose among properly submitted medical opinions, but may not set his own expertise against that of physicians who submitted opinions to him) (citing *Balsamo v. Chater*, 142 F.3d 75, 80–81 (2d Cir.1998) (in the absence of a supporting medical opinion, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion)).

Although the ALJ provides a detailed listing of the objective evidence in other parts of her decision, the accompanying analysis strongly suggests that she impermissibly substituted her own lay opinion of Plaintiff's capabilities into the RFC determination, and this improper analysis appears to have tainted her assessment of Dr. Singh's treating source opinion. For example, the ALJ stated:

> Furthermore, the claimant's courses of treatment and examination findings greatly undermined the alleged severity of her physical and mental symptoms. Even after accounting for the waxing and waning nature of fibromyalgia-related symptoms, if the claimant's symptoms were as severe as alleged, they would have likely prompted more aggressive pain and other symptom management, more aggressive or specialized mental health treatment, or presented more consistently or dramatically on examination. However, they did not. [The] alleged intensity, persistence, and limiting effects of the claimant's symptoms was inconsistent with her courses of treatment and examination findings as such.

(T. 1773.)

The ALJ cited no medical evidence to support her conclusion that the conservative course

15

of treatment selected by Plaintiff's physicians was inconsistent with disability.[5] The Second Circuit has recognized that physical disability does not necessarily correlate with the "intrusiveness" of the recommended medical treatment. *Shaw v. Cater*, 221 F.3d 126, 134 (2d Cir. 2000) (finding that a treating physician's recommendation of "only conservative physical therapy, hot packs, EMG testing—not surgery or prescription drugs" was not, on its own, substantial evidence that claimant was not physically disabled); *see also Burgess*, 537 F.3d at 129 ("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen."); *Molina v. Kijakazi*, No. 21-CV-3869 (JLC), 2022 WL 16946823, at *11 (S.D.N.Y. Nov. 15, 2022) (explaining that plaintiff's conservative treatment regime was "not a good reason" for assigning limited weight to a medical opinion).

A searching review of the record does not clarify the ALJ's reasoning for discounting Dr. Singh's treating physician opinion. Neither does it provide the court an adequate explanation for the ALJ's very specific RFC findings that Plaintiff could sit for up to thirty minutes at one time and for a total of six hours over the course of the workday and could stand or walk for up to four hours total, until her conditions deteriorated on July 18, 2018 and limited Plaintiff to only two hours of standing or walking. "[W]hen the record provides no support for the specific amount of time that a claimant can sit or stand without relief, a specific finding toward that end is not supported by substantial evidence." *Theresa W. v. Comm'r of Soc. Sec.*, No. 20-CV-704-LJV, 2021 WL 4324421, at *4 (W.D.N.Y. Sept. 23, 2021) ("If an ALJ includes a 'highly-specific' limitation in the claimant's RFC, that limitation cannot come from whole cloth"). *See also Tricic*

---

[5] Plaintiff's medical providers appear to have considered more invasive treatment and opted against it. At least one treating specialist considered surgery for Plaintiff's chronic left knee pain, but concluded that "operative intervention" had the potential to make Plaintiff's pain worse. (T. 1574.)

16

*v. Astrue*, No. 6:07-CV-0997 (NAM), 2010 WL 3338697, at *3-4 (N.D.N.Y. Aug. 24, 2010) (the ALJ's determination that plaintiff could stand/walk and sit for about six hours in an eight-hour workday was not supported by substantial evidence where two treating doctors opined that plaintiff should avoid prolonged sitting and/or standing, and no examining doctor provided a specific opinion about plaintiff's ability to sit or stand for particular periods of time); *DiVetro v. Commissioner of Social Sec.*, No. 5:05–CV–830 (GLS/DEP), 2008 WL 3930032, at *12–13 (N.D.N.Y. Aug. 21, 2008) (the record lacks any assessment from either a treating source or a consultant supporting a finding of plaintiff could sit for eight hours in a given workday; this portion of the ALJ's RFC determination was not well-supported). The ALJ's RFC determination never connected these detailed limitations to any objective, opinion, or testimonial evidence, and rejected the only medical opinion on the ability to sit, stand or walk for extended periods. *See, e.g. Andrews v. Astrue*, No. 7:10–CV–1202 (RFT), 2012 WL 3613078, at *9 (N.D.N.Y. Aug. 21, 2012) (there is no support in the medical record for the ALJ's RFC assessment that plaintiff can engage in light work; the ALJ failed to point to what evidence supports his findings, but instead, simply discounts the medical opinion evidence).

The VE testified that any one of several limitations opined by Dr. Singh would have prevented Plaintiff from being able to maintain full-time employment. (T. 1813-1817.) Indeed, the ALJ recognized that if she assigned controlling weight to Dr. Singh's opinion, she would likely have found Plaintiff to be disabled. (T. 1775) ("Dr. Singh's medical opinion was likely work-preclusive."). Therefore, the ALJ's errors in evaluating Dr. Singh's opinion cannot be considered harmless, and this Court recommends remand for further proceedings to allow proper application of the treating physician rule.

17

**D. The ALJ's Evaluation of Plaintiff's Knee and Hip Impairments Does Not Present Independent Grounds for Remand.**

Plaintiff's medical record show extensive treatment for bilateral knee pain with her rheumatologist and orthopedist and the development of pain in her right hip. (T. 1283, 1574, 1591, 1695, 1698.) At least one specialist considered the pain to be a symptom of Plaintiff's psoriatic arthritis. (T. 1574.) In her decision, the ALJ did not identify Plaintiff's knee or hip pain as severe impairments at step two of the sequential evaluation. (T. 1764.) Plaintiff contends that this omission rises to error requiring remand because the ALJ failed to specifically discuss the functional limitations associated with her knee and hip pain during the VE testimony, the RFC analysis, and the step five determination. (Dkt. No. 11 at 24.)

This Court does not find that the ALJ's consideration of Plaintiff's knee and hip impairments presents separate grounds for remand. While the ALJ did not identify Plaintiff's knee and hip pain as severe impairments at step two, she did discuss imaging reports of Plaintiff's knees and hips, and referenced treatment notes addressing complaints of knee and hip pain, stiffness, and reduced range of motion. (T. 1304, 1564, 1764, 1766.) In addition, the summary of Plaintiff's treatment history that accompanied the ALJ's RFC analysis references Plaintiff's complaints of joint pain in the hips and knees, her difficulties with sitting or standing for long periods, her gait, and the range of motion in her hip. (T. 1771-1774.) Thus, Plaintiff has not shown that the ALJ failed to consider Plaintiff's knee and hip pain when considering the extent of Plaintiff's physical functional limitations.

Therefore, this Court does not recommend remand based on the manner in which the ALJ reviewed Plaintiff's knee and hip pain. That being said, those impairments and the accompanying functional limitations may need to be revisited by the ALJ on remand as part of a

proper evaluation of Dr. Singh's medical opinion and the development of a physical RFC determination that is supported by substantial evidence.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **GRANTED**; Defendant's motion for judgment on the pleadings (Dkt. No. 16) be **DENIED** and that the matter be **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  October 10, 2024
        Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge